KAREN L. LOEFFLER
United States Attorney

STEVEN E. SKROCKI
BRYAN D. SCHRODER
Assistant U.S. Attorneys
 Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: steven.skrocki@usdoj.gov
        bryan.schroder@usdoj.gov

PAUL AHERN
U.S. Department of Justice
National Security Division,
Counterterrorism Section
950 Pennsylvania Ave NW
Washington, D.C.
Tel: (202) 305-0633
paul.ahern@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   3:10-cr-00061-RRB |
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM OF THE UNITED STATES |
| PAUL GENE ROCKWOOD, JR., AKA "BILAL", | |
| Defendant. | |

I.  **SUMMARY OF SENTENCING RECOMMENDATIONS**

   **TERM OF IMPRISONMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8 Years**

   **SUPERVISED RELEASE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3 Years**

   **FINE.** . . . . . . . . . . . . . . . . . . . . . . . . **STIPULATED UNABLE TO PAY**

   **SPECIAL ASSESSMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **$100.00**

The court has before it a citizen of the United States who was interdicted by federal agents prior to realizing his plans for the targeted execution and/or bombing of private citizens, former and current members of the United States military and several institutions. The defendant's plans were well beyond the internet researching stage and had been in place for more than four years. While in Alaska, Rockwood researched and discussed methods of execution, often at great length and in significant detail, components for mail bombs were purchased, the targets had been selected and a loose operational time line was established. The investigation clearly revealed that the further Paul Rockwood got away from King Salmon, Alaska, the more operational he was to become. Because of that fact, Paul Rockwood and his spouse were interdicted by agents of the FBI's Joint Terrorism Task Force before any further aspects of Rockwood's plan could be realized. This charge and this agreement followed.

The agreement reached between the defendant and the United States contemplates that in exchange for the defendant's sentence of eight years imprisonment, the maximum term available, that this court sentence the defendant's spouse in accord with the agreement entered into between her and the United States. For the reasons set forth herein, and with respect to the sentencing factors to be taken into account under 18 U.S.C. § 3553 the United States requests

that the court accept the parties' plea agreement and sentence Paul Rockwood to a term if imprisonment of eight years.

### A. Summary of the Terms of the Agreement

The agreement before the court is a joint agreement between and among the defendant, the defendant's spouse and the United States. For purposes of sentencing the agreement of the parties is conditioned on Nadia Rockwood receiving a sentence of probation.

If the court accepts this defendant's plea of guilty as knowing and voluntary, it must proceed to and find an independent factual basis for Rockwood's plea of guilty to Count 1 of the Information, that is, False Statements to a Federal Agent in a Matter Involving Domestic Terrorism in violation of 18 U.S.C. 1001(a)(2) and, in turn, decide whether to accept or reject the parties' proposed plea agreement(s) with respect to the parties' agreement on sentencing. In aide of making that determination, the United States provides the court with the following information with respect to the United States Sentencing Commission Guidelines and the sentencing factors under 18 U.S.C. § 3553.

//

## II. GUIDELINE APPLICATIONS

### A. Agreement as to Application of Sentencing Guidelines

The parties agree that United States Sentencing Commission Guidelines provide for a sentence higher than the statutory maximum term of Section 1001 in a case of terrorism. Despite that higher sentencing recommendation, the plea agreement entered into by the parties results in Rockwood serving the maximum term of imprisonment available to be imposed as authorized by the statute, a term of eight (8) years. (See *U.S.S.G. § 5G1.1*, statutorily authorized maximum sentence less than the minimum of the guideline range, the statutorily authorized guideline sentence shall be the guideline range)

### B. Acceptance of Responsibility

Under a typical U.S.S.G. analysis, and if the guidelines applied, the United States would agree that the defendant has accepted responsibility with respect to a three-point downward adjustment.

### C. Criminal History Category Computation

Since this offense is one that involved or was intended to promote a federal crime of terrorism the defendant's criminal history is increased from Category I to Category VI.

### D. **Statutory Penalties**

The statutory penalties are as follows:

Count 1: False Statement to a Federal Agent in an Offense Involving Domestic Terrorism

    1) A maximum term of imprisonment of eight (8) years. **(Stipulated eight year sentence)**

    2) a maximum $250,000 fine;

    3) 3 years of supervised release; and

    4) a $100 mandatory special assessment.

*AGREED U.S.S.G. CALCULATIONS:*

**Count 1:**

Base Offense Level (2J1.2)................................... 14

Felony Promoting Federal Crime of Terrorism U.S.S.G. § 4A1.4(a))

Increases Base Offense Level................................ 32

Acceptance of Responsibility................................ <u>-3</u>

Total........................................................ 29

Criminal History Category ................................... VI

Sentencing Guideline Range ...................... 151-118 Months[1]

---

1

Statutory Maximum Binding Sentence . . . . . . . . . . . . **96 Months (8 Years)**[1]

*SUPERVISED RELEASE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 years

*FINE* .. . . . . . . . . . . . . . . . . . . . . . . *Parties Agree Defendant Unable to Pay a Fine*

### III. APPLICATION OF 18 U.S.C. § 3553(a)

In addition to the Guidelines, the following sentencing factors set forth in 18 U.S.C. § 3553(a) apply: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford deterrence, protect the public from further crimes and provide the defendant training and treatment; (3) the kinds of sentences available; (4) the established Guidelines sentencing ranges; (5) any pertinent Guidelines policy statements; (6) the need to avoid unwarranted sentence disparity between defendants with similar records convicted of similar crimes; and (7) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a)(1) through (7). Each sentencing factor is addressed in turn:

    **A.** **Nature and Circumstances of Offense and the History and Characteristics of the Defendant.**

---

[1] (See U.S.S.G. § 5G1.1, statutorily authorized maximum sentence less than the minimum of the guideline range, the statutorily authorized guideline sentence shall be the guideline range)

In exchange for complete satisfaction of the terms conditioned by both plea agreements, the United States is willing to recommend a sentence of eight years imprisonment. Inasmuch as the court is being asked to approve the agreement, the United States provides under this heading limited and specific facts, along with those provided to the court in the final Presentence Report, concerning the nature and circumstances of the offense, and the history and characteristics of the defendant.

As reflected in the factual basis of the plea agreement Rockwood converted to Islam in late 2001 or early 2002 while living in Virginia. After converting, and while residing in Virginia, Rockwood gravitated to the violent- Jihad-promoting ideology of cleric Anwar al-Awlaki (Al-Awlaki). Over time, Rockwood's adherence to Al-Awlaki's teachings grew in conviction, manifesting into a personal conviction that it was Rockwood's personal responsibility to exact revenge by death on anyone who desecrated Islam.

Before moving to Alaska in 2006, Rockwood began researching and selecting possible targets for future execution and continued that search after his move to King Salmon in 2006. While living in King Salmon, Rockwood continued his adherence to Al-Awlaki's ideology. This adherence included devotion to Al-Awlaki's violence-promoting works, "*Constants on the Path to*

*Jihad*" and "*44 Ways to Jihad*" as well as various other writings and lectures promoted by Al-Awlaki. It also included continuous monitoring and subscription to various violent Jihad promoting web sites that are strewn across the internet.

Along with the selection of specific targets Rockwood also began researching the ways he would execute those on his target list. Among other topics, Rockwood researched individual explosive components, construction of remote triggering devices such as cellular telephones, and the construction of improvised explosive devices for delivery by common carrier.

In late 2009, Rockwood began to share his plans about committing acts of domestic terrorism with others whom he felt shared his beliefs. With some, this included discussing the use of mail bombs and the possibility of killing targets by gunshot to the head. By early 2010, Rockwood's intended target list was formalized to include approximately 20 specific targets. Thereafter, in April, 2010, ROCKWOOD gave his written target list to his wife Nadia Rockwood who carried the list with her on a trip to Anchorage. The target list was subsequently obtained by investigators of the Federal Bureau of Investigation's Joint Terrorism Task Force ("JTTF"). For her part, Nadia Rockwood was aware of her husband's intention to cause to harm to others and was further aware that what she carried to

Anchorage was in furtherance of Paul Rockwood's intent to harm others, though, the exact timing of Rockwood's plan had yet to be concretely formalized.

On May 19, 2010, the Rockwood's were interdicted by the JTTF at the Ted Stevens Anchorage International Airport while en route to Boston, Massachusetts. Both Paul and Nadia Rockwood were interviewed by agents of the JTTF with respect to the target list.

During his interview, JTTF agents provided Rockwood a copy of his target list that had been obtained by investigators after Nadia Rockwood's delivery of the list to another in April. In response to investigators' questions, ROCKWOOD knowingly provided materially false statements and explanations about the target list, including denying that he created the list, denying the purpose of the list, and denying ever having such a list of names. During the interview, Rockwood attempted to place responsibility for the list on another when, in truth and fact, Rockwood selected the names and entities appearing on the list as those he believed should be targeted for assassination and attack.

The following is a summary of the Rockwood selected. The names, geographic information and other identifying information for each target have been omitted:

- Target #1 listed an individual's name;

- Target #2 listed individual's name, military rank, and branch of military service;

- Target #3 listed an individual's name, branch of military service, and hometown;

- Target #4 listed an individual's name, branch of military service, military rank, and hometown, spouse's name, number of children and place of employment;

- Target #5 listed an individual's name, branch of military service, employment status, and hometown;

- Target # 6 listed an individual's name, age, hometown, and the individual's spouse's and name of the target's child;

- Target #7 listed a religious organization;

- Target #8 listed an individual's name, age, home town, parent and sibling's name;

- Target #9 listed an individual's name;

- Target #10 listed an individual's name, branch of service, military rank and hometown;

- Target #11 listed an individual's name and military rank;

- Target #12 listed an individual's name, military rank and hometown;

- Target #13 listed a religious organization and its address;

- Targets #14 and 15 listed an individual's name, rank, and hometown;

- Target # 15 listed an individual's name, rank and hometown;

- Target #16 listed an individual's name and hometown;

- Target #17 listed the name of a publishing company;

- Target #18 listed the name of a publishing company;

- Target #19 listed the name of a publishing company executive;

- Target #20 listed a media personality, and an email/website address associated with the media personality.

The government's investigation, as reflected in the Final Presentence Report established that Rockwood researched ways of sending an improvised explosive device, that he purchased specific components for use in an explosive device, developed his own plans for explosive initiators and selected his targets through internet research. Rockwood's intent to assassinate United States citizens and uniformed members of its armed forces has been in place for four years. This was not a case of "if", but a case of "when" with the "when" becoming more likely with Rockwood's departure from King Salmon.

B.  **Need for the Sentence to Reflect the Seriousness of the Offense, Afford Deterrence, Protect the Public, and Rehabilitate the Defendant.**

A sentence of eight years incarceration is a significant sentence and one that will reflect the seriousness of the offense, afford deterrence and protect the public. It is the maximum sentence available under this charge. With respect to this offense, the rehabilitative effects of imprisonment on this defendant, given his belief system, is unknown. Abandonment of his intent to act as investigator, prosecutor, judge and jury can only come from within.

C.  **Kinds of Sentences Available.**

The term of imprisonment and term of supervised release agreed to by the parties is the maximum available under the statute.

D.  **Sentencing Ranges Available.**

The only sentencing available is below the maximum agreed to by the parties which the United States finds unacceptable.

E.  **Pertinent Policy Statements.**

The United States is unaware of any pertinent policy statements applicable to the sentence it recommends.

**F. Need to Avoid Sentence Disparity.**

The sentence sought takes into account the full range of offense conduct and seeks the maximum sentence available for this type of crime. There is, to the government's knowledge, no issue with respect to sentencing disparity. The defendant has admitted to lying to investigators about a list of individuals selected for death. A sentence of the maximum term is perfectly appropriate under these facts.

**G. Restitution.**

Restitution is not applicable in this case.

**H. Victim Impact.**

The United States anticipates several victims will be providing written or oral commentary to the court prior to, and or during sentence. Several will be calling in to partake in the sentencing hearing telephonically. The United States expects that government counsel will be reading one victim impact letter/statement, another victim intends to address the court himself by reading a prepared statement. Both statements/letters will be provided to the court under separate pleading.

## IV. CONCLUSION

Paul Rockwood's plans to murder citizens of the United States as revenge for alleged acts against Islam and its followers went beyond the targeting phase and had entered the operational phase when he was confronted and interdicted by law enforcement. Due to the work of investigators those plans have now been thwarted and the public, as well as his conceived targets, have been made aware of his intentions and his acts in preparation thereof. A sentence of eight years will, for that period of time, arrest any further operational acts and is the maximum available under the law for this charge. For those on the target list, eight years imprisonment may not be enough and it is clear that the specter of Rockwood's intentions have and will continue to haunt them in the future. At some point, Paul Rockwood will be released with, perhaps, reduced zeal to harm. To that end, and

//

//

//

upon release, the decision on whether to stay this course, or to seek a more restrained and tranquil path to his life, lies with him and him alone.

RESPECTFULLY SUBMITTED this 16th day of August, 2010, in Anchorage, Alaska.

KAREN L. LOEFFLER
United States Attorney

s/Steven E. Skrocki
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: steven.skrocki@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on August 16, 2010
a copy of the foregoing was served electronically
on: MJ Haden

s/ Steven E. Skrocki